IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**BAKARI AJUMU,**      Case Number 1:13 CV 189

    Petitioner,      Judge Jack Zouhary

  v.      REPORT AND RECOMMENDATION

**BARRY GOODRICH,** Warden

    Respondent.      Magistrate Judge James R. Knepp II

### INTRODUCTION

*Pro se* Petitioner Bakari Ajumu, a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). On April 24, 2013, Petitioner filed an Amended Petition adding two grounds for relief.[1] (Docs. 5, 7). Respondent Warden Barry Goodrich filed a Motion to Dismiss (Doc. 8), which Petitioner opposed (Doc. 9) and Respondent replied. (Doc. 12).

The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated February 26, 2013). For the reasons discussed below, the undersigned recommends Respondent's Motion to Dismiss be denied in part and granted in part.

### PROCEDURAL BACKGROUND

Petitioner was convicted of murder in violation of Ohio Rev. Code § 2903.02(B) on May 5, 2010. (Doc. 8-1, at 4). On June 17, 2010, through counsel, Petitioner filed a notice of appeal with the Eighth District Court of Appeals. (Doc. 8-1, at 10). The court of appeals overruled each

---

1. Two days later, it appears a copy of the Amended Petition was filed, less the first page. (Doc. 7). In both documents, Petitioner asserts the same additional grounds for relief. Therefore, for purposes of this Report and Recommendation, Doc. 7 is moot.

of Petitioner's assignments of error and affirmed the trial court's judgment in a journal entry dated May 26, 2011. (Doc. 8-1, at 55). On July 5, 2011, Petitioner filed a Notice of Appeal with the Ohio Supreme Court. (Doc. 8-1, at 72). On October 19, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 8-1, at 136).

### FEDERAL HABEAS CORPUS

Petitioner represented that he provided the instant Petition for habeas corpus to prison officials for mailing on January 18, 2013, alleging the following grounds for relief:

> **GROUND ONE:** The State commits reversible error, not harmless error, when the State elicits testimony from its own witnesses which reveals a criminal defendant's prior criminal record before the defendant testifies.
>
> **Supporting Facts**: During the girlfriend's direct testimony, she was asked by the assistant prosecuting attorney what, if anything, she knew about Petitioner's background. She replied, "nothing really." The state then asked "[d]id you have any information that he spent time in prison?" The court sustained petitioner's objection to that question. The state repeated the question during its direct examination of a police detective, asking the detective did he, during the course of his investigation, "make a determination as to whether or not Petitioner had a criminal history?"
> The questions posed to the girlfriend and the detective about Petitioner's "criminal history" explicitly sought to elicit that which is forbidden by Evid.R. 404(B) (information about Petitioner's prior conviction). The state does not dispute that this constituted prosecutorial misconduct, at least as it relates to the girlfriend, and the Eighth District Court of Appeals could find no justifiable basis otherwise for the question. Instead, the state falls back on the proposition that there is no such thing as a perfect trial and that any error in the questioning was harmless beyond a reasonable doubt.
> It is the Petitioner's contentions that the prosecutorial misconduct deprived Petitioner of his constitutional right to a fair trial under the Fourteenth Amendment.
>
> **GROUND TWO**: The prosecutor deprives a defendant his constitutionally guaranteed right to a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution when she suggests to a jury that the defendant's post-arrest silence was evidence of recent fabrication.
>
> **Supporting Facts**: During Petitioner's cross-examination, the state challenged Petitioner on his claim of self-defense by eliciting the admission that Petitioner "walked away" after the stabbing and his concession that no other witness saw the gun that he claimed to have seen in the waistband of the victim's pants. The state then

2

> asked," [y]ou were so justified in [stabbing the victim] you didn't even tell anyone, right?" The court overruled an objection and, before Petitioner could answer, the state asked: "Sir, yes or no: Did you tell anyone besides us here in court?" Petitioner replied "no."
>
> The Court of Appeals found the circumstances of this case (i.e., Petitioner leaving for Nevada without having spoken to the police and without having been given his Miranda rights) justified the state's questioning without violating the principles set forth in *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. The Court of Appeals stated: "[t]he state's question, viewed in the context of the testimony, referenced Petitioner's conversations with the girlfriend just days after the stabbing and his state of mind during the time of the stabbing - that is, if he had been in such fear of imminent death or great bodily harm from the victim, why didn't he communicate that fact to the girlfriend. He had not been in police custody at this point, so he had not been given any assurances that his statements could not be used against him. It follows that no constitutional guarantees for the right to remain silent attached and none were violated. The state could validly impeach Petitioner on this basis." (Internal citations omitted). See *State v. Ajumu*, 8th Dist. No. 95285, 2011-Ohio-2520, at 11-12.
>
> Because the decision of the Court of Appeals is contrary to clearly established federal law as determined by the United States Supreme Court, the case should be set for an evidentiary hearing and ultimately remanded to the trial court for a new trial.

(Doc. 1, at 5-6, 12).

In his Amended Petition, filed April 24, 2013, Petitioner added two grounds for relief and supporting facts, as follows:

> **GROUND THREE**: The trial court erred in violation of Evid. R. 404(A)(2) and 405(B), the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when it excluded evidence of specific acts of violence by the victim that was admissible to prove Petitioner's state of mind in support of Petitioner's claim of self defense and to demonstrate that Petitioner had a valid reason for fearing the victim, when the evidence had been identified, authenticated and viewed by the jury.
>
> **Supporting Facts**: . . . Petitioner testified that he acted out of self-defense. During trial, Petitioner's counsel moved for the admission of a videotape showing the violent tendencies of Touché. . . The court excluded the video, stating that it was cumulative because the jury had previously viewed it and that it wished to avoid any "technical issues" that might arise in the jury room because the video had been played on the state's laptop computer.
>
> **GROUND FOUR**: Petitioner's conviction for murder in violation of Chapter 2903.02(B) of the Ohio Revised Code is not supported by sufficient evidence, and therefore, violates Petitioner's rights under the Fourteenth Amendment to the United States Constitution.
>
> **Supporting Facts**: . . . Here, it is undisputed that Touché's death was caused by the injury he's sustained when Petitioner cut him with a knife. . . [T]he State was

3

> required to prove Touché's death was caused "as a proximate result of Petitioner's committing or attempting to commit," "an offense of violence that is a felony of the first or second degree and that is not a violation of R.C. 2903.03 or 2903.04."
>
> There is absolutely no evidence that Touché's death was caused as a proximate result of Petitioner's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of R.C. 2903.03 or 2903.04. None whatsoever.

(Doc. 5, at 3-8).

**MOTION TO DISMISS**

Respondent moves to dismiss the Petition and Amended Petition as untimely. (Doc. 8). In doing so, Respondent asks the Court to find the statute of limitations ran out 365 days after Petitioner's time for seeking direct review expired. (Docs. 8, 12). In a well-written response, Petitioner argues the "anniversary" method and Rule 6(a) of the Federal Rules of Civil Procedure afford him one year from the day after time for seeking direct review expired to timely file. (Doc. 4).

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), there is generally a one-year period in which a prisoner in state custody may file a petition for habeas relief in federal court:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under Rule 6(a)(1)(A), the statutory clock starts the day after the triggering event. F.R.C.P. 6(a)(1)(A) (when calculating a time period in any statute that does not provide a specific method for computing time, "exclude the day of the event that triggers the period"). Applied to the case at bar, the triggering event is "the expiration of the time for seeking [direct] review". § 2244(d)(1)(A); *Bronaugh v. Ohio*, 235 F.3d 280, 284-285 (6th Cir. 2000) (applying Rule 6(a) to start § 2244(d)'s statute of limitations the day after the expiration of time for seeking direct review).

Here, the Supreme Court of Ohio dismissed Petitioner's request for appeal on October 19, 2011. (Doc. 8-1, at 136). Petitioner had ninety days to petition for writ of certiorari in the United State Supreme Court, but did not do so. Sup. Ct. R. 13. Therefore, his judgment became final ninety days later, on January 17, 2012 (the date of the triggering event). Under the Sixth Circuit's clear instruction, the statute of limitations began to run the next day, or on January 18, 2012. *Bronaugh*, 235 F.3d at 284-285; 28 U.S.C. § 2244(d)(1); F.R.C.P. 6(a).

Respondent relies on *Merriweather v. City of Memphis*, 107 F.3d 396 (6th Cir. 1997) and *Pimental v. Hudson*, 2008 U.S. Dist. LEXIS 86012 (N.D. Ohio 2008) to argue the clock should begin on January 17, 2012 (the date of the triggering event). (Doc. 8, at 10-11). However, *Merriweather* was a civil rights case and relied on a Tennessee state statute which modified the federal default rule set forth in F.R.C.P. 6(a). Furthermore, in *Pimental*, the Court noted in passing that the statute of limitations began to run on the same date time expired for seeking direct review, but the issue was irrelevant because the petitioner filed months after the statute of limitations expired. For these reasons, both cases are easily distinguished.

The undersigned is aware that 2012 was a leap year comprised of 366 days, but relies on the plain language of the statute to hold Petitioner had "1-year", as opposed to 365 days, to file

5

his Petition. *See also Parsons v. Turner*, 2013 U.S. Dist. LEXIS 183368, at *10 n.4 (N.D. Ohio) ("Because February 2012 is encompassed within the statutory calculation period and 2012 was a leap year, the Court will presume Parsons had 366 days to file a timely habeas petition."); *Cook v. Eberlin*, 2009 U.S. Dist. LEXIS 66231, at *6 (N.D. Ohio) (rejecting, in dicta, respondent's argument that the petitioner has 365 days, as opposed to one year, to file a petition); *Forston v. Carter*, 79 F. App'x 121, 123 (6th Cir. 2003) (noting, in dicta, petitioner "arguably had one additional day . . . in which to file his petition because 2000 was a leap year."). Moreover, the Court must presume that if Congress intended the statute to run for 365 days, as opposed to one year, it would have said so. Therefore, the undersigned finds the statute of limitations expired on January 18, 2013.[2]

Next, addressing the filing date, the Court received the instant Petition on January 25, 2013. (Doc. 1). However, according to the mailbox rule, a habeas petition is deemed filed when the petitioner gives the petition to prison officials for filing in the federal courts. *Keeling v. Warden*, 673 F.3d 452, 456 (6th Cir. 2012). Petitioner represents, and Respondent does not dispute, that Petitioner gave his Petition to prison officials on January 18, 2013. (Doc. 1, at 12). Therefore, January 18, 2013 is the filing date of the Petition.

Thus, Petitioner's original Petition was filed "1-year" after January 18, 2012, on January 18, 2013. For the above stated reasons, the undersigned concludes the original Petition (Doc. 1) was timely filed, albeit by the proverbial skin of its teeth.

The Court now turns to the Amended Petition, filed April 24, 2013 (Doc. 5); undoubtedly after the January 18, 2013 deadline. Because AEDPA's limitation period is not tolled while the "federal courts consider applications for habeas review," the Amended Petition was not timely

---

2. Although the running of the limitations period is tolled during the pendency of a "properly filed" application for state post-conviction relief or other collateral relief, Petitioner did not file any post-conviction motions. 28 U.S.C. § 2254(d)(2).

filed. *Thomas v. Romanowski*, 363 F. App'x. 452, 454 (6th Cir. 2010) (citing *Duncan v. Walker*, 533 U.S. 167, 181 (2001) ("§ 2244(d)(2) does not toll the limitation period during the pendency of a federal habeas petition.")).

In limited situations, the relation back doctrine set forth by Fed. R. Civ. P. 15(c) can apply in a habeas action, but only to the extent its application does not conflict with the AEDPA limitation period. *Malone v. Fortner*, 2013 U.S. Dist. LEXIS 37147, at *18 (M.D. Tenn.) (citing *Mayle v. Felix,* 545 U.S. 644, 649 (2005)). Indeed, the Supreme Court set forth:

> An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.
>
> \* \* \*
>
> Habeas Corpus Rule 11 permits application of the Federal Rules of Civil Procedure in habeas cases "to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules ..." Section 2242 specifically provides that habeas applications "may be amended . . . as provided in the rules of procedure applicable to civil actions."
>
> \* \* \*
>
> If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance.
>
> \* \* \*
>
> So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.

*Mayle*, 545 U.S. at 650, 654, 662, 664.

Here, in Grounds One and Two of the timely filed Petition, Petitioner argues evidence of his prior bad acts was wrongfully permitted at trial and his right to remain silent was violated. (Doc. 1, at 5-6). In Grounds Three and Four of the Amended Petition, Petitioner claims the state court erred by not admitting evidence of the victim's prior bad acts and argues he was convicted on insufficient evidence. (Doc. 5, at 3, 6).

7

Upon comparison, the Amended Petition presents new claims "supported by facts that differ in both time and type from those the original pleading set forth". *Mayle*, 545 U.S. at 650. Indeed, Ground Three addresses the victim's prior bad acts and Petitioner's motive, and Ground Four addresses sufficiency of the evidence. Plainly, neither of these claims relate to the original Petition, which concerns evidence of Petitioner's own prior bad acts and the right to remain silent. Because the claims do not seek to clarify or amplify a claim or theory raised in the original Petition, Grounds Three and Four of the Amended Petition do not relate back and are therefore, time barred. *Wiedbrauk v. Lavigne*, 174 F. App'x 993, 1002 (6th Cir. 2006) ("[i]t is not sufficient that the newly asserted claims 'relate to the same trial, conviction, or sentence as a timely filed claim[,]'") (quoting *Mayle*, 545 U.S. at 662).

*Equitable Tolling*

Equitable tolling allows courts to review time-barred habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). To demonstrate he is entitled to equitable tolling, a habeas petitioner must establish: 1) he has diligently pursued his rights; and 2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S. Ct. at 2562; *see also Robison*, 424 F. App'x at 442 (explaining that prior to *Holland*, the Sixth Circuit used the five factors elicited in *Dunlap v. U.S.*, 250 F.3d 1001 (6th Cir. 2001) to determine equitable tolling under AEDPA). Such equitable tolling, however, is rare, granted sparingly, and evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011); *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004).

Here, Petitioner indicates he "inadvertently omitted" from his Petition claims that were raised on direct appeal to the state courts. (Doc. 5, at 1, 9). By his own account, Petitioner failed to show an extraordinary circumstance kept him from timely filing. Thus, his Amended Petition should be dismissed as time-barred.

## CONCLUSION AND RECOMMENDATION

Following review, the undersigned recommends the Court DENY Respondent's Motion to Dismiss the Petition (Doc. 1) as time-barred but GRANT Respondent's Motion to Dismiss the Amended Petition (Doc. 5) as time-barred.

s/James R. Knepp II<br>
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).